2014-01889
GL
A. Rauchberg

Index No. 14 Cv 2670 (Kam) (LB)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

GREGORY PERKINS

Plaintiff

-against-

CARLTON NEWTON, MR. BROWN, CLARKE,#4399

BOYD,#18468, WEISE,#18492, CARMEN CAMPBELL

BENNETT, KATHY ANN DOCKER, C.O. MICHAEL

TURNBULL,#9879, THE CITY OF NEW YORK

Defendants

PLAINTIFFS" OPPOSITION TO

DEFENDANTS" MOTION TO DISMISS

THE AMENDED COMPLAINT

Gregory L. Perkins

Pro Se

Gouverneur Correctional Facility

P.O. Box 480

Gouverneur, N.Y. 13642-0370

# TABLE OF CONTENTS

Preliminary Statement....................................1

Statement Of Facts......................................4

Motion To Dismiss.......................................7

Summary Judgement.......................................8

Deliberate Indifference.................................8

Deprivation Of Therapeutic Diet........................12

Serious Medical Need...................................14

Exhausted Administrative Remedies......................15

Conspiracy.............................................19

Procedural Due Process.................................24

Defendants Failed To Comply With Local Civil Rules......25

Municipal Liability....................................26

Conclusion.............................................30

## PRELIMINARY STATMENT

Plaintiff is currently or formerly a inmate in the New York City Department of Corrections custody (DOC) brings this action pursuant to 42 U.S.C. sec. 1983 against the defendants for their deliberate contribution to the violation of plaintiff's 1st, 5th, 8th, and the 14th amendents right. Defendants alleging that the plaintiff has 1) failed to exhaust available administrative remedies for only "some" of his claims (see defendants preliminary statement (1) ) 2. plaintiff has failed to allege an unconstitutional condition of confinement or deliberate indifference to a serious medical need;  3. plaintiff failed to properly allege an unconstitional denial of due process;  4. plaintiff failed to properly allege conspiracy or retaliation; and  5. plaintiff fails to state a claim of municipal liability against the City of New York.

Defendants have overlooked the fact that there is absolutely no system in place for therapeutic diets for inmates who travels outside the facility, and return to that facility, or any other facility, he or she is not provided with the appropiate diet, and has to go with out food. Prison Condition that are unsafe or that deprive you of a basic human need such as shelter, food, exercise, clothing, sanitation, and hygiene, violation the eighth amendment when they act with deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm or deprives a prisoner of basic human need. Serious medical need, certyain condition might not be

/

unconstituinal on their own, they add up to create a single ,
indentifiable  harm, also the defendant had a culpable state of
mind.

   The Supreme Court explained that an inmate must rely on
authorites to treat his/hers medical needs, if the authorities
fail to do so, those needs will not be met. Due process, in this
case of the plaintiff, is being treaded very differently than
the way most prisoners are treated. "significant hardship" The
deprivation of due process actually interfered with his/her
access to the court or prejudiced an existing action. The New
York Department Corrections inmate grievance program is the very
cause of the due process, violation when your grievance's ⸺ are
always missing all the time or ignored, discarded, lost or
otherwise mishandle by not being handled at all. However, when
the person who run's this office Mr. Brown (Grievance
Coordinator) tells you that he has discarded your grievance
because he didn't feel like dealing with it and this happens over
and over, this is when it becomes deliberate indifference.

   When an inmate is appealing a grievance within the NYCDOC,
to the CORC, they must give the appeal to the grievance
coordinator because there is no working address to process your
grievance, you will not be able to find any working address,
yet the address you will find is no longer working.

   As for defendants who has conspired and being a culpable
state of mind, when C.O. Boyd #18468, C.O. John Doe, and the 2

2

Jane Doe defendants on two specified days (Dec 8th, and Dec 9th 2013) took the time to alter the paper work. C.O. Boyd, intentionally disobeyed her captain, she ignored the Captain's orders over and over for as long as she could..

## STATEMENT OF THE FACTS

1. Plaintiff asserts that he has been prohibited from exercising his first amendment right to petition the government where the defendants refuse to accept or even acknowledge plaintiff "formal complaints " as implicitly abserved by the first amendment of the United States Constitution.

2. As a result of defense council misinterpretation of the law, defendant rely on several case law, see., defendants memorandum of law, in support of their defense that the failure to respond to plaintiffs grievances does not give rise to a first amendment violation. However, first amendment right was acknowledge grievance, ( an issue of constitutionality ) led to plaintiff eight amendment claim. Given the seriousness of this eight amendment claim and as a result of and in connection with plaintiff's first amendment right to petition the Government, plaintiff's claim —— rise to a first amendment violation where such failure to respond to plaintiff " formal complaints resulted in an additional claim- an eight amendments violation.

3. New York City, and the New York City Department of Corrections, do not have a system in place for inmates who have a therapeutic diet do to his/her medical care, no person in the care of NYCDOC, should go hungry for any reason. When a person is given a therapeutic diet by the medical staff such as a Doctor, the prison officials should not intentionally deny or

$4|$

delay the inmates access to said therapeutic diet. Nor should said inmate not be given food that complied with medical diet. When a inmate is not able to eat the food that was given to him/her be the prison officials, or that inmate did not get to eat at all. When this happens you are being deprived of his human needs ( food ).  This has happen to the plaintiff each time plaintiff went outside the facility for court or medical, going hungry or just knowing that your going to go hungry is the cause of the harm, the pains of being hungry.

4. Plaintiff alleges that officer Boyd, and the Doe defendants conspired to deprive plaintiff of his "direct observational therapy medication,. See the plaintiff preliminary statements.

5. I plaintiff Perkins, alleged, that I (my self) forwarded my grievances to the Warden's office for determination because the grievance coordinator would not do it, he in his own words told me no, he would do it, the only reason I asked him to, was, because the rules state that you have to submit to his office (IGRP). I took the time to write Dora B. Schrino (Commissioner) and Shirvahna Cobin "Executive Director of Inter governmental Affairs, NYC Board of Correction and I forwarded each of my grievances.  As in my preliminary statement I also went to Mr. Brown, (grievance corrdinator) to submit my grievances to C.O.R.C., and you also have to submit them to his office because there is no working address for this office (C.O.R.C.)

All of the defendants in this action has had a contribution to the violations of this complaint. Plaintiff has done all that he could, yet found that the I.G.P.P office and all the staff had done all they could do to deny, stop, and harm the Plaintiff in the matters of this complaint. Defendant has went as far as destroy plaintiff grievances. Then talk about it as if he has something to gloat about. By doing this Plaintiffs right to due process of law is being blocked unfortunately right of access to the courts are also being blocked, nefarious acts by the New York City, and the D.O.C... Defendant are in violation of plaintiffs 1st.5th,8th and 14th amendment rights. Defendants are in violation of Federal Rules of civil procedure 7.2, defendant has cited 54 cases and has only provided the Plaintiff with 19 of the 54 holding back 36 cases... Defendants apparently intend to prevent Plaintiff from seeking judicial relief. Plaintiff in fact established 1st amendment claim where his legal documents were destroyed in retaliation for his filing of grievance, grievance is a protected speech. However defendant has deliberately ignored the concerns in this complaint. Defendants failed to provide evidence contradicting plaintiff's claims, plaintiff should be allowed to amend the complaint upon learning each name of the Doe Defendant's whom plaintiff wish to sue.

Plaintiff felt the need to initiat suit in a desperate attempt to cease such praxtice.

6

MOTION TO DISMISS


On  motion to dismiss for failure to state a claim upon which
relief may be granded under rule 12(b)(6) of the federal rule of
Civil Procedure, the court must accept as true all well pleaded
factual allegations set forth in the cmplant and must draw all
positive interences in favor of the plaintiff. See, Hudson v.
Groiner, 2000 U.S. Dist. Lexis 17913, Bolt Elec v. City Of New
52 F. 3d 465,469.

A case should only be dismissed when it appears beyond a
reasonable doubt that the plaintiff has "No" set of facts in
support of his claim which would entitle him to relief. Cohen v.
Koeniq 25 F.3d 1168 (quoting conley v. Gibson 355 U.S.-41,
45-46)  The court must accept all allegations in the complaint
as true and draw interences in the non-moving party's favor.
Lataro v. N.Y. Cardiothoracic Grp, PLLC 570 F.3d-471,475 (2nd
Cir 2009).

To survive a motion to dismiss under rule 12(b)(6), "a complain
must contain sufficiet factual matter, accepted as true, to state
a claim to relief that is plausible on it's face "ASHCROFT v.
Iqbal 556 U.S. 678- 2009). A plaintfff must plead factual content
that allows the court to draw the reasonable inferences that the
defendents is liable for the misconduct alleg. "However, detailed
factual allegations are not necessary"-(Quoting Twombly 550 U.S.
554 at 555-56) Moreover, Plaintiffs prose pleading are " to be
liberally construed..(and), however, inartfully pleaded, must be
held to less stringnt standards than formal pleadings drafted by
lawyers " Erickson v. Pardus 551 U.S. 89, 94 (2007)

## SUMMARY JUDGEMENT

If on motion to dismiss under rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary Judgement under rule 56 Summary Judgement is appropriate if the record show that there is "no genuins dispute as to any material fact and the movant is entitled to judgement as a matter of law" Fed. R. Civ. P. 56(a)' see., Anderson v. Liberty lobby, Inc 477 U.S. 242, 248. " A genuine issue exists for summary judgement , purposes where the evidence, viewed in the light most favorable to the non-moving party, is such that a reasonable jury could decide in that party' favor" Harlem assocs v. Inc Vill of mineola 273 F. 3d 494, 498 (2nd circuit 2001)

## DELIBERATE INDIFFERENCE

The test for deliberate indefference consists of two parts. Plaintiff must show a "serious medical need by alleging that failure to treat a prisoner's condition bould result in further significant injury on the unnecessary and wanton infliction of pain. Text v. Panner, 439 F. 3d 1091 (9th cir 2006) Hill v. Dekal DeKalb Reg'l youth det, ctr., 40 F. 3d 1176, 1187-(11th Cir 1994) The physical injurty has to be greater than the minimis but it do does not have to be severe, Siglar v. Hightower, 112 F. 3d 191 (5th cir 1997). Aggravated conditions could be atypical and significant, Palme v. Richards, 364 F. 3d 60 (2nd cir 2004).

Indications of such a need include " The existence of an injury that a reasonable doctor or patient would find important and worthy of comment, the presence of a medical condition that significantly affect an individuals daily activities or the existence of chronic and substantial pain" McGuckin v. Smith 974 F.2nd 1050, 1059-60, Estelle, 429 U.S. at 104; Jett v. Penner, 439 F.3d 1091, 1096 (9th cir. 2001). Plaintiff must $show that a defendants response to the need was deliberately indifferent.

Deliberate indifference to serious medical needs may be manifested in two ways. "It may appear when prison officials deny, delay on intentionally interferes with medical treatment, Todaro v. Ward, 565 F. 2d 48 (2nd Cir 1997) Brownd v. District of columbia, 514 F. 3d 1279 (D.C. Cir 2008), Estelle, 429 U.S. at 104-05; Lopes v. Smith, 203 F. 3d 1122 (9th cir 2000). Prison officials may rely on what a prison doctor tells them. Johnson v. Doughty, 443 F. 3d 1001 (7th cir 2006) or it may be whown by the way in which prison officials provide medical care" Hutchingo Hutchinson V. United states 838 F. 2nd 390, 394.

To state an eight(8th) amendment claim based on conditions of confinement, an inmate allege that. (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied minimal civilized measure of life's necessities, and (2) subjectively, the official acted with a sufficiently culpable state of mind... Such as deliberate indifference to inmate health or safety "Walker v. Schult 717 F. 3d. 119, 125 (2nd cir 2013)

"To meet the objustive element, the inmate must show that the conditions, either alone or in comnbination, pose an unreasonable "risk" of serious damage to his Health " to meet the subjective element, the plaintiff must show that the defendants "acted with more than mere negligence " and instead 'disregarded' an 'excessive risk' to inmate health or safety. Under the 8th amendment, officials may  not create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety "Overton v. Bazzetta 539 U.S. 126 137 (2003), Farmer v. brennan 511 U.S. 825, 835 (1994), Talal v. White 403 F. 3d 423 (6th cir 2005), Helling v. Mckinny,  509 U.S. 25, 33 (1993), Koehl v. Dalsheim, 85 F.3d 86, 88 (2nd cir 1996), Nance v Kelly, 912 F. 2d 605 (2nd cir 1990) (Per curiam)(Denial of prescribed) orthepedic shoes may state a deliberate indifference.

Plaintiff in the instant action clearly showed the defendants of the serious potential harms associated with defendants actions or lack of, therefore meeting the objective standard, the plantiffs showed via his exhibits or initial complaint that the defendants were informed about these harms, yet deliberately chose to ignore the concerns and increase plaintiffs risk of being affected. wherefore, contrary to defendants memorandum, plaintiff does in fact establish an eighth (8th) amendment claim based on conditions of confinement with respect to the amended complaint.

Additionally, to establish deliberate indifference to a serious medical need, the objective component required that a plaintiff show, his actual deprivation of adequite medical care and that the inadaquance in medical care is sufficiently serious. "Salahuddin v.  Goord 476 F. 3d 263, 279-80 (2nd circuit 2006). A prisoner is actually deprived of adequate medical care if prison officials fail to take "reasonable measures" in response to a medical condition, citing farmer v. Brennan 511 U.S. 825, 847, such as refusing to aeknowledge, respond and take immediate action to a serious medical concern, when compelling evidence was provided to support plaintiff internal complaints.

As to the 2nd prong, different analysis apply depending whether the claim is for failure to provide any treatment as opposed to provide deficient treatment. If the claim is for failure to Provide treatment "Courts examine whether the inmate's medical condition is sufficiently serious" (citing Smith v. Carpenter 316 F. 3d 178, 185-86 (2nd cir 2003). By condrast, where the inadequency is in the medical treatment given, the harm faced by a prisoner due to the challenged deprivation of care "Gorrs v. Breslin 402 F. Appx 582, 585 (2nd cir 2010) (quoting smith 316 F. 3d at 186). Plaintiffs, supported by compelling evidence, clearly shows the significant "risk at harm". As for the subjective component, Plaintiff must allege that the defendant acted with "a sufficiently culpable state of mind" salahuddin 467 F. 3d at 280 (citing Wilson v. Seither 501 U.S. 294, 300). Sufficient culpability "requires that the charged official act or failure to act while actually aware.... that serious inmate harm (would) result". (citing farmer 511 U.S. at 836-37)

## DEPRIVATION OF THERAPEUTIC DIET

Defendants in the motion to dismiss, states that the
deprivation do not rise a sufficient claim of confinement.
Plaintiff states that four or five times is far from being a
isolated incident, defendants *knew* about this and yet did nothing
However the fact that plaintiff was denied meals each time he
went outside the housing facility "each facility the plaintiff
has been in, it was the same, (BKDC, OBCC, NIC, RNDC) none of the
facilities have a system in place to make sure that all the
inmates within it's care are treated the same, just because a
inmate has a medical condition should said inmate be treated
unfair, this form of discrimination is not related to a legitimat
governmental purpose. "Doe v. Sparks, 73F. Supp. 227 (W.D. Pa
1990)

The 14th amendment to the constitution guarantee's everyone
"equal protection of the law, meaning prison cannot treat some
prisoners differently than it treats other. Inmates within the
nyc doc, are being treated very differently than inmates with
therapeutic diets, if a inmate has a therapeutic diet and goes
outside the facility then comes back to the intake of said
facility he will not be able to eat that meal and will have to
feel the pain of being denied basic human need "food" The pain of
being "Hungry" just knowing that each time you go out of the
facility you will not eat (go hungry). The 14th amendment
guarantees everyone from discrimination, after all the complaints
that was made the defendants had to know what was taking place
and did nothing, defendants had a culpable state of mind.

12

Plaintiff is also challenging the fact there is no system in Place for inmates with therapeutic diets given by a doctor... that goes outside the Facility. Prisons should rely on what a prison doctor tells them "Johnson v. Doughty, 433 F. 3d 1001 (7th cir. 2006). When these same non medical officials interfere with the treatment that your doctor has ordered. Therapeutic diets are apart of your treatment when ordered by a doctor. In considering whether you have aserious medical need, the court must look at several factors, 1) whether a seasonable doctor or patient would consider the need worthy of comment or treatment, 2) whether the condition significantly affects daily activities and 3) whether you have chronic and serious pain. "Brock v. Wright, 315 F. 3d 158 (2nd cir. 2003).

A person knowing that he/she will have to go without food each time he/she goes outside the facility can cause mental health concerns can qualitfy as serious medical needs. Estate of cole by Pardue y. Fromm, 94 F. 3d 254 (7th cir 1996); Gregore v. Class, 236 F. 3d 413 (8th cir 2000). Emotional distress, mental anguish, psychological stress, physical injury, all fall under the eighth amendment.

13

SERIOUS MEDICAL NEED

Plaintiff, Gregory L. Perkins, has been "diagnosed" with Asthmia, Arthritis, Degenerative Disk Disease, Diabetes, Hypothyroidism, Sciatica (Sciativ nerve) and Immune Thrombocytopenic purpura, al being a serious medical need, plaintiffs medications are "Atorvastatin, Levothyroxine, Lisinopril, Omeprazole, celebrex, Neurontin, Tylenol/codeine#3, Advair, Prednislone AC, Cyclopentolate, Albuterol and a high dose of steroids for his immune thrombocytopenic purpura (I.T.P).

This medication helps him stay alive and with pain very serious pain... The above medications are also apart of the treatment ordered byyDoctor as well as his therapeutic diet. Beliberate indifference came in tb play when non-medical officials intervene with the treatment ordered by doctor "Estelle, 429 U.S. At 104-05 Lopez v. Smith, 203 F. 3d 1122 (9th cir 2000). Plaintiff conditions was very obvious to non-medical staff such as, C.O. Boyd, she took plaintiff Perkins to the medical department (clinic) during a emergency where plaintiffs pain was so severe that the plaintif was crying and could not walk and was taken by way of stretcher and could see first hand the pain the plaintiff had to deal with. Know that she knew full well what she was doing when she interfered or delay and deny plaintiff his medications.

14

She knew that would be a substantial risk of harm, as well Jane
Doe #2 She was one of the nurses who took care of plaintiff
during this emergency and others that took place. Hill v. DeKalb
Regl youth det, Ctr, 40 F. 3d 1176, 1187 (11th cir 1994). Jane
Doe #2 altered the log sheet that made this deliberate indifferen
indifference and its illegal, Saucie v. Katz, 533 U.S. 194 (2001)
Harlow v. Fitzgerald, 457 U.S. 800 (1982), Prison legal New v.
Lehman, 397 F. 3d 692, 701 (9th cir 2005)

## EXHAUSTED ADMINISTRATIVE REMEDIES

Under the PLRA "no action shall be brought with respect to
prison conditions under sec. 1983 of this title, or any other
federal law by a prisoner confind in any jail, prison, or
other correctional facility "unless" such administrative remedies
are exhausted" 42 U.S.C. Sec. 1997e (a). Apparently inmates
wishing to challenge prison conditions may do so if internal
remedies are exhausted, which plaintiff in the  instant case
has done.

To prevail on a sec. 1983 calaim, a plaintiff must show that a
defendant acted under the color of the law and that a defendant
deprived plaintiff of a right secured by the constitution. Gomez
v. Toledo 446 U.S. 635, 640. Defendants, in their motion to
dismiss contends that a "Grievance" is not something thats
Protected by the United States Constitution.

15

However, to the contrary, not forwarding initial complaint (Grievance) to the next appropriate official, in accordance with the grievance procedure hindered plaintiff from exercising their 1st amendment right. A suit in this court may not be commenced pursuant to 42 U.S.C. Sec. 1983 unless internal memedies are exhausted. it is well settled that filing of a prison Grievance is an activity protected by the 1st amendment, Gill v. Pidlypchak 389 F. 3d 379, 384 (2nd cir 2004). Also, Davis v. Goord 320 F. 3d 346, 352-53 (2nd circuit). Wherefore, defendants failure to forward and /or entertain plaintiff's exhaustion remedy in a seemingly attemp to preclude plaintiffs from commencing this action is a clear example of depriving someone of a right secured by the constitution.

To sustain a 1st amendment retaliation claim, an inmate must demonstrate the following: 1) that the speech or conduct at issue was protected, 2) that the defendants took adverse action against the plaintiff and 3) that there was a causal connection between the protected speech and the advers action "Gill v. Pidlychak 389 F.3d at 380. Plaintiff in fact established 1st amendment claim where his legal work were destroyed in retaliation for his filing of "Grievance" (emphasis added).

Houston v. Schiro no. 11 Cir. 7374, 2013 u.s. Dist Lexis 118867 (SDNY Aug 20 2013). Varela v. Demmon, indicates that grievances are protected by the United States Constitution. Wherefor, considering the fact that the grievances are protected by the 1st amendment, defendants are clearly at fault and responsible for violating plaintiff's right by refusing to acknowledge and or take action upon receipt of grievance.

Additionally, it has long been established beyond a doubt that prisoners have a constitutional right of access to the court by disregaurding grievances. "The right to meaningful access to the courts extends to established prison grievance procedures. Valandingham v. Bojorquez 866 F. 2d 1135, see also, Hines V. Gomez 853 F. Supp 329 and cases cited therein the "Government" to which the 1st amendment guarantees a right of redness of grievances includes the prison authorities. Sorran's Gasco Inc v. Morgan 874 F. 2d 1310.

Finally, in some cases a prisoner may be required to exhaust the established prisoner grievance procedure before securing relief in federal court. See, 42 U.S.C. Sec, 1197 et Seg. In those cases, a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system. Bradley v. Hall 64 F. 3d 1276, 1279. Wherefore, the griecance procedure, which is secured by the 1st amendment of the United States Constitution was violated by the defendants.

foil request has been sent to; NYC Department of Corrections, Laura S. Mello, Senior counsel/Foil Officer, 75-20 Astoria Boulevard, East Elmhurst, New York 11370, Requesting 1) Documentation on an active address grievance supervisor, Corc, a system in place for therapeutic diets for inmates who are traveling, corrections officers training concerning medical with inmates, and the training of grievance coordinators.

17

Marcello v. Dept of Corr., No. 07 Civ. 9665, 2008 U.S. Dist. LEXIS 60895, at 9 (S.D. N.Y. July 30th 2008) (Stating that Prisoners may overcome the exhaustion requirement only if they are to show either 1) That administrative remedies were not actually available to them' 2) That defendant should be stopped from raising plaintiffs failure to exhaust as an affirmative defense' or 3) That special circumstances exist that excuse Plaintiffs non-compliance with official procedural requirements). N.Y. Comp. Codes R. t Regs. tit. 7 Sec 701.5 (b)(4)(i)(2007' State of New York Department of correctional services, Directive no. 4040, Inmate Grievance program sec 701.5 (b)(4)(i) (2006).

Prison griecance system exhaustion remedy should be excuse because it was the office of the grievance system that by refusin to acknowledge and to take any action upon receipt of grievance. Mr. Brown (Grievance coordinator) made this become a special circumstances along with C.O. Clarlke  4399, The defendants in this action are the very cause of the plaintiff not being able to exhaust all remedys, and should be estopped to raising plaintiffs alleg failure to exhaust an affirmative defense, because the defendants in this action make this a special circumstance that excuse plaintiffs alleg non-compliance, Official Procedural Requirements. The supreme court has ruled that there is no total exhaustion rule, Jones v. Bock 549 U.S. 199, 219-223 )2007 Marvin v. Goord, 255 F. 3d 40, 43 n.3 (2nd cir. 2001) 7NYCRR Sec 701. 1 (stating that the inmate grievance program is intended to supplement, not replace existing formal or informal channels of problem resolution)

18

CONSPIRACY

By its very nature, conspiracy requires at least two or more persons, since one cannot conspire with oneself. While an agreement to violate the law is an essential element of the crime of conspiracy a defendant may be convicted of despite the fact that the other members of the conspiracy feigned thier agreement and had no intention of perpetrating the object crime. A claim for Civil Conspiracy also requires Malice and intent to injure the plaintiff.  35 Ny. Jur. 2d Criminal Law' Principles and offenses Sec 280.

It has been well established that correctional officers of the city of N.Y. as well as nurses within the city and state of New York has been appropriatley trained in thier fields. For correction officers, it is reasonable to believe that they have received the appropriate training pertaining to what they are allowed and not allowed to do concerning medical situations and inmates. To prove a Sec. 1983 Conspiracy, a plaintiff must show 1) An agreement between two or more state actors or between a state actor and a private entity, 2) To act in concert to inflict unconstitutional injury, and 3) An overt act in furtherance of that goal causing damage. Plaintiff in this matter applies 42 U.S .C Sec. 1985 in addition to Sec. 1983 Conspiracy.

In reference to one of the cases that was sited (Beckles v. City of New York, No. 08 Civ. 03687, 2011 U.S. Dist. LEXIS 21059 (S.D.N.Y Feb. 25,2011), by the defendants the plaintiff's case should be distinguished much differently then the defendants citings, 1) The plaintiff has not alleged excessive force. 2) The factors in the plaintiffs case bear no similarities to defendants citings. It is the plaintiffs belief that the defendants in this case, on matters of conspiracy, acted in concert with one another which inflicted an unconstitutional injury of deliberate indifference, all defendants in this matter played a significant role.

On December 8th, 2013 correctional officer Boyd, Shield 18468, at approximately 9 a.m. attempted to pick up the plaintiff and escort him to the clinic to receive his direct observation therap (DOT) Medication. There is a system in place that directs the escorting officers on who to pick up, when to pick up and for what purpose they're being picked up. This list is normally generated the night before the inmate would be picked up. Or should i say sometime during or after 12 midnight the over night staff generates a list based on who is needed to receive their DOT medication, based on each individuals records, if   in fact I had received my medication as defendants have stated then my name would have never been placed on the list to have been escorted, the escort would have never attempted to pick me up in the first place.

20

3) The next stage is where correction officer Boyd, Shield 18468, repeatedly informed correction officer martin (Housing Unit Officer of Plaintiff) that she was returning to pick up the Plaintiff very soon. After several hours went by C.O. Boyd had still not picked up the plaintiff by this time the area captain (or supervisor) was on scene and was informed of the situation. She called down to the clinic and spoke with C.O. Boyd., C.O. Boyd in fact told the captain that she was returning to pick me up. The captain informed the plaintiff that he would be picked up shortly however that never happened. Officer Martin, at plaintiff request, called back down to the clinic and spoke with C.O. Boyd who now states that the plaintiff had already recieved his medication.

C.O. Martin relayed the message to me and threw both hand in the air and stated "dont get me to lying". Shortly after the area Captain returned and inquired if plaintiff had received his meds. She was informed by Officer Martin that the plaintiff had not left the floor nor has he recieved his medication. At that point the captain became frustrated and immediately called back down to the clinic. She stepped away with the phone so that i cannot hear what was being said, but within 5-10 minutes the plaintiff was being escorted to the clinic.

4) Once at the clinic plaintiff proceeded to the medication window. Present was C.O. Boyd, C.O. Turnbull, Shield  9879, and Jane Doe 1(nurse). Nurse Jane Doe 1 Came from behind the window with the medication log sheet and addressed the plaintiff by stating "Mr. Perkins, I would like to show you that you've alread recieved your medications".      21

She displayed the medication log sheet and showed me what indicated that twelve a.m. that i had returned to the clinic and recieved the medication. C.O. Turnbull, who was standing beside C.O. Boyd, then stated, loud enough for me to hear, "why is she showing him al of that, she may as well just tell him the truth, refering to Jane Doe 1. Meanwhile C.O. Boyd just stood there with a peculiar look on her face as if she knew what she had done

. I was finally given my medication but only after having to go the entire morning and dealing with the pain of plaintiffs conditions. Pain medication is the essential part of the plaintif well being and play a major role in his daily activities. Without them the pain becomes unbearable.


5) On December 9th, 2013 plaintiff was escorted to the clinic on the 3pm to 11pm shift and nurse Jane Doe 2 approached the plaintiff while he was waiting online at the medication window, and stated "Perkins, I understand that your acting like a little girl," at that point plaintiff corrected her upon the manner in which she spoke and with a hand gesture she went behind the medication window with one of the medication log sheets in hand and stated "see Mr. Perkins, You did receive your medications." Plaintiff further stated to Jane Doe 2 that you know and i know i had never received medication at 12 midnight and that the indication on the log sheet has been altered from the indication that was there the previous day. She looked at the plaintiff and said "Prove it", and abruptly walked away.

All defendants conspired and worked inconcert with one another all had knowledge of what was taking place and yet did nothing, Toduro v. Ward, 565 F. 2d 48 (2nd Cir. 1977). The prison had denied on unreasonably delayed Prisoners access to proper medical care in violation of the 8th amendment. However an official can be held responsible if he or she knew (or should have known) that he/she was acting illegally. Saucer v. Katz, 533 U.S. 194 (2001) Harlow v. Fitzgerald, 457 U.S. 800 (1982) Prison legal news v. Lehman, 397 F. 3d 692, 701 (9th cir. 2005).

Rohodes v. Chapman 452 U.S. 337 (1981) Prison must provide the minimum necessities of life, such as food, shelter and clothing as well as medical care. Hill v. DeKald Reg'l youth Det. Ctr, 40 F. 3d 1176, 1187 (11th cir 1994) could result in further signification of pain, Estelle, 429 U.S. at 104' Jett v. Penner, 439 F. 3d 1091-1096 (9th cir. 2001). If a doctor says you need treatment and your need is obvious, than it is probably a serious medical need. Jones v. United States, 91 F. 3d 623 (3rd Cir 1996). The Court found the prison breach when officials withheld his medication. And in PLummer v. United States, 580 F. 2d 72 (3rd cir. 1978) Porter v. Nussle, 534 U.S. 516 (2002), The Supreme Court held that prison conditions refers to everything that happens in prison, including single incidents of Gaurd brutality or inadaquate medical care.

On the 17th of July 2014 at the Otis Bantum Correctional Center (O.B.C.C) correction officer Pullucci, destroyed my only copies of the complaints in the Southern and Eastern Districts, However this only happen after i had the talk with the sister of defendant C.O. Boyd  18468, the sister being, Captain Boyd (of O. B.C.C) the captain in her own words revealed to me that she was the biological sister of C.O. Boyd  18468 of the Brookly Detentio Complex. It is a federal crime for state actors to threaten or assault the plaintiff or witnesses in federal litigation, 18 U.S. C. Sec 1512 (a)(2).  Then came the complain of harrassment, it didnt matter what facility the plaintiff was in something happen, sometimes C.O. Boyd would show her-self the day of, before or the day after something took plase the last time i saw her was in 2014 at R.N.D.C. However this time she was now a captain. The new matters at hadd are being taken up within the southern district of New York.

The medication order (log sheet) you will find that defendant, Kathy Ann Dockery (Jane Doe 1) has not taken the time to add her signature to the page 2, of the log sheet as other nurses has done, you will also find that defendant Carmen Campbell Bennett, on two of the log sheets added her signature but did not put down a date, Yet she added a date to the 3rd log sheet 12/9/13 you will also find that Carmen Campbell Bennett on all other Medicat- ion log sheets from 2013 and 2014, the defendant has always put a date with her signature on all medication log sheets, yet on Dec 8th 2013 she did not, but at no other time has this happen.

A foil request has been sent to find out the times and date the defendant worked along with the shift and the time defendant clocked out of work, there are just to many circumstances in this case that dont add up. I had hoped that the request would be back by now, yet as of this time it had not. Ignorance to the law is not an excuse of the law. All defendants that are mentioned in this complaint acted under the color of the state and all guilty of all accusations made in plaintiffs complaint.

## PROCEDURAL DUE PROCESS

There is no dispute that the constitutional requirements of procedural due process apply to proceedings before administrative agencies. In the context of an agency dtermination, Procedural Due Process requires that the agency provide an opportunity to be heard in a meaningful manner at a meaningfull time. Duong v. I.N. S., 118 F. Supp. 2d 1059 (S.D.Cal. 2001) Dean V. Ashcroft, 176 F. Supp. 2d 316 (D.N.J. 2001). The Fourteenth Amendments Due Process Clause protects against deprivations of life, liberty, or property' and those who seek to invoke it's procedural protection must establish that one of these interests is at stake.

It aims only at fair dealing, adequate hearing, impartial decision and a procedure to obtain them. Thus, the fundamental requirement of due process is the opportunity to be heard at a meaningful manner. There is no dispute that the constitutional requirements of procedural Due Process apply to proceedings before administrative agencies, due process requires that the agency provide an opportunity to be heard in a meaningful manner and time.

26/

U.S.V. Raines, 362 U.S. 17, 80 S. Ct 519, 4L, Ed, 2d 524(1960) holding that every state official, high or low, is bound by the 14th Amendment.Due Process of Law extends to those situations where a citizen may be deprived of life, liberty, or property, whether the proceeding is judicial, administrative or executive in nature, Williams v. White Plains Housing Authority. 62 Misc. 2d 613, 309 N.Y.S. 2d 454 (Sup 1970) Judgement affd 35 A.D. 2d 965, 317 N.Y.S. 2d 935 (2nd Dep't 1970) The 14th amendment does not, in guaranteeing due process, assure immunity from judicial error. In this case the defendants action is clear. depriving the Plaintiff his rights secured by the constitution. A Grievance is protected by the Constitution. Houston v. Schiro no. 11 cir 7374 2013 U.S. Dist Lexis 118867 (S.D.N.Y Aug 20, 2013) Vareala v. Demmon.


DEFENDANTS FAILED TO COMPLY WITH LOCAL CIVIL RULES


Plaintiff received defendents motion to dismiss, Plaintiff received nineteen cases out of 56 cases that were individually cited by defendents counsel. Local Civil rule 7.2 States that counsel must provide a Pro Se Litigat with printed copies of decisions cited in any submission that are reported or unreported Defendents have intentionally failed to comply with federal rules of civil procedure in an attempt to undermine the court and to take advantage of the alfeady disadvantage Pro Se Litigate.

25

Due to plaintiffs limited research ability and limited law library access time and the short amount of time for submitting and filing instant papers, wherefore expressively disagree to all defendents arguements and its implications that may have been indicated, but unnoticed by plaintiff. Plaintiff request's for the court to deny defendants motion to dismiss and rule in favor of the plaintiff for the above reasons. This request is being made pursuant to FRCP 7.2., 41(B)

## MUNICIPAL LIABILITY

All persons born or naturalized in the United States, and Subject to the Jusisdiction thereof, are citizens of the United States and of state wherein they reside. No state shall make or enforce any law which shall abridge the priviledges or immunities of citizens of the United States' Nor shall any state deprive any person of Life, Liberty, or Property without Due Process of Law' Nor deny to any person within its jurisdiction the equal protec- tion of the laws. Contrary to defendants beliefs and allegations of failure to state a claim of municipality. Detailed allegations within the initial or ammended complaint are not required, The intention was to inform the wrong doing, misconduct, unlawful policies, custom and practive by the city of New York and all its agencies.

26

For example the United States attorney Preet Bharara questions citys commitment to reform at riker island, The U.S. Attorney threatened to take action against the jail noting that questionable promotions of rikers Honchos raised concerns the city was not complying with his orders of reform. During this time the city controller Scott Stringer called on the two men, Chief of Department William clemons and Warden Turhan Gumusdere, to be suspended immediately. These arent just cold statistics, these are incidents that speak directly to the safety of inmates on rikers. The corruption on riker's island goes far beyond physical abuse, sexual assault, drug sales by corrections officers, weapons sales by corrections officers, contraband such as cigarettes ~~slaes~~ by correction officers, corrections officers being active members of gangs such as Bloods, Crypts, Etc.

Second example; It has become the policy and custom for the city of New York to reward their agents of the New York City Department of Corrections and the New York City Police Department for their wrong doings, ~~shile~~ acting under the color of the state. For instance correction officer Boyd 18468 is now Captain Boyd, Clemons and Gumusdere were Promoted by Commissioner Ponte, According to the U.S. Attorney the Department of Corrections withheld parts of an internal review from the Feds. Including information on Clemons and Gumesders culpability.

City Corporation Counsel Zachary Carter said Mayor De Blasio would produce evidence that he was fixing and addressing all the problems and corruption on Riker's Island

    That evidence has never been presented. The City Of New York has taken on the custom of allowing it's agencies to govern themselves and only choose to get involved when one it becomes a matter of public news, and two when a Federal and superior Government agency gets involved. Take the New York city department of corrections for instance, writing the warden is equivalent to wasting your time for they never respond to any issues, if there is a problem with the inmate grievance program there is virtually no one you can write to to address the issues. As stated above the warden is non-compliant. The commissioners office will only patronize you with a letter stating that your complaint has been forwarded to the appropriate department, and you will never hear from them again. The board of corrections has never once responded to any of my complaints. The Inspector Generals office only chooses to deal with violence, drug issues, gang issues, and sexual assaults. Not one time has I.G. responded to any of my written complaints. The City of New York has made it a custom for itself and it's agencies to ignore the complaints of inmates in hopes that most would be too afraid and intimidated of the New York City Department Of Corrections knowing full well that going up against the department can be extremely dangerous. The influence of the department reaches far beyond staffing, yet you will find that the gang members follow the instructions given to them by the New York City Corrections. Getting the city or the

28

department of corrections to remedy a wrong once it's been recognized on it's own would literally take an act of God. The problem with the department is that they have no one to answer to. They don't supervise one another and instead of fixing a problem, they justify it. They hide behind the laws and procedures that govern them, and the fact that their staff and agents will manipulate these laws and procedures to accommodate them at all cost, even in this legal action you will find that the defense counsel has subdued to such honorless tactics of litigation by failing to follow federal rules of civil procedure and exploiting the unskilled Pro Se litigate. Again the city and it's agencies will stoop to any means to achieve it's goals. Even here corporation counsel presents no work ethics whatsoever. Plaintiff acknowledges defendants expertise in manipulating and undermining the law. Plaintiff requests for this court to deny defendants motion to dismiss and rule in favor of the Plaintiff, for all the above reasons.

Trezevant V. City of Tampa, 741 f2d 336

This is the case in which $25,000.00 in damages was awarded for 23 minutes of unlawful incarceration, by the City of Tampa Florida, and the court stated both municipality and county board of criminal justice liable to motorist for unconstitutional deprivation of right to liberty.

Municipality may be liable under civil rights statute for an unconstitutional deprivation when deprivation is visited -pursuant to government "custom" even through such custom has not received formal approval through body's official decision making channels.

Court views all evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the non-moving party...

If there is substantial evidence opposed to the motions, that is, evidence of such- quality and weight that reasonable and- fair- minded men/women in the exercise of impartial judgement might reach different conclusions, the motion should be denied, and the case submitted to the jury..

Garirs V. Rowland,678 f.2d 1264 (5th cir 1982)

Before dismissing a Pro Se civil rights complaint the Plaintiff should be given a statement of complaints, deficiencies and an opportunity to cure them. Karim-Panahi V. Los Angeles Police Department 839 f.2d 621 at 623-24.


Wherefore Plaintiff respectfully requests for this court to deny defendants motion to dismiss and rule in favor of the Plaintiff in all aspects.

YOUR TRULY,

Gregory Perkins

Sworn to before me this

17 Day of February 2015

Notary Public

KATHERINE FREUND
Notary Public, State of  New York
No.01FR6308637
Qualified in Jefferson County
Commission Expires July 28, 2018

30

Page 1 of 2

## PRINT ADDITIONAL COPY FOR NURSING ORDER

Printed 12/03/2013 @ 09:13 AM

### MEDICATION ORDER

Name: **PARKINS, GREGORY**   BookCase: **349-13-12827**   NYSID: **05002757P**   DOB: **04/06/1964**   Loc: **BKHD/9LA**

Drug: **Neurontin**   Strength: **400 MG**   Sig: **1 tablet**   Freq: **Every 12 Hours**   Duration: **7 days**

Form: **Capsule**   Route: **Orally**   Start: **12/03/2013**   Stop: **12/10/2013**

Diagnosis: **Radiculopathy**

Physician Comments:   Pharm:

Written by: **Lesly Jean Gilles,MD**   Nursing Profile by:

Approved by:

Allergies: **CHILI , Tomato , pineapples , Bactrim , Tomatoe sauce , peanut butter**

*3491312827*

Order Status: **NEW**   Dispense: **RN-DOT**   Date and Time of Order: **Jean Gilles,Lesly 12/3/2013 9:12:13 AM**



| MONTH: | | | | | | | | | | | | YEAR: | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D/Hr | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

PROFILED BY: _____   DATE: 12 – 3 – 13   TIME: _____

**Drugs Not Administered Code Keys:**
1. Refusal
2. Out to court
3. Out to hospital/specialty clinic
4. Off unit (i.e., visit, recreation, library
5. Withhold(pending lab, abnormal lab,and/or vital signs)
6. Non-formulary and not available at time of administration
7. Not in cassette, pharmacy notified
8. Medication given to take to court or hospital specialty clinic
9. OOS (out of stock) at time of administration
10. NPO

## STAT OR SINGLE DOSE MEDICATION

| ORDER DATE | MEDICATION | DATE | TIME | INIT. | REASON AND RESPONSE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## MEDICATION NOT ADMINISTERED

| ORDER DATE | MEDICATION | DATE | TIME | INIT. | REASON AND INTERVENTION |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## NURSE'S SIGNATURE

| DATE | FULL SIGNATURE | INITIALS | PRINT NAME |
|---|---|---|---|
| 12/3/13 | Clebert Ad | CA | C. Adrien, RN |
| 12/5/13 | chh | TG | T. GHEORGHIES |
| 12/4/13 | RGSL | J | Mar |
| 12/8/13 | Robert RN | | T. Roberts, RN |
| 12/9/13 | CBert | CB | Campbell - Bennett |
| | | | |
| | | | |

## NYC DEPARTMENT OF HEALTH AND MENTAL HYGIENE - CORRECTIONAL HEALTH SERVICES
### MEDICATION ADMINISTRATION RECORD

Name: **PARKINS, GREGORY**   BookCase: **349-13-12827**   NYSID: **05002757P**   DOB: **04/06/1964**   Loc: **BKHD/9LA**

Drug: **Celebrex**   Strength: **100 mg**   Sig: **1 tab**   Freq: **Every 12 Hours**   Duration: **7 days**

Form: **Capsule**   Route: **Orally**   Start: **12/03/2013**   Stop: **12/10/2013**

Diagnosis: **Radiculopathy**

Physician Comments:   Pharm:

Written by: Lesly Jean Gilles,MD   Nursing Profile by:

Approved by:

Allergies: **CHILI , Tomato , pineapples , Bactrim , Tomatoe sauce , peanut butter**

*3491312827*

Order Status: **NEW**   Dispense: **RN-DOT**   Date and Time of Order: **Jean Gilles,Lesly 12/3/2013 9:12:13 AM**

| | MONTH: Dec | | | | | | | | | | YEAR: 2013 | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D/tr | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 9A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

PROFILED BY:   DATE: 12-3-13   TIME:

**Drugs Not Administered Code Keys:**

1. Refusal
2. Out to court
3. Out to hospital/specialty clinic
4. Off unit (i.e., visit, recreation, library)
5. Withhold(pending lab, abnormal lab,and/or vital signs)
6. Non-formulary and not available at time of administration
7. Not in cassette, pharmacy notified
8. Medication given to take to court or hospital specialty clinic
9. OOS (out of stock) at time of administration
10. NPO

## STAT OR SINGLE DOSE MEDICATION

| ORDER DATE | MEDICATION | DATE | TIME | INIT. | REASON AND RESPONSE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## MEDICATION NOT ADMINISTERED

| ORDER DATE | MEDICATION | DATE | TIME | INIT. | REASON AND INTERVENTION |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## NURSE'S SIGNATURE

| DATE | FULL SIGNATURE | INITIALS | PRINT NAME |
|---|---|---|---|
| 12/3/13 | Albert AC | CA | C. Adrien, RN |
| 12/5/13 | Att | TG | T - GHEORGHES |
| 2/5/15 | | 9 | Moth |
| 12/8/13 | RP, RN | m | A. Roberts, RN |
| | Olens | og | Campbell-Bennett |
| | | | |
| | | | |
| | | | |

Printed 12/03/2013 @ 09:13 AM

## MEDICATION ORDER

Name: **PARKINS, GREGORY**

BookCase: 349-13-12827

NYSID: 05002757P   DOB: **04/06/1964**   Loc: **BKHD/9LA**

Drug: Tylenol/Codeine #3

Strength: 300-30 MG

Sig: 2 tabs

Freq: **Every 12 Hours**   Duration: 7 days

Form: **Tablet**

Route: Orally

Start: 12/03/2013   Stop: 12/10/2013

Diagnosis: Radiculopathy

Physician Comments:

Pharm:

Nursing Profile by:

Written by: Lesly Jean Gilles,MD

Approved by:

Allergies: CHILI , Tomato , pineapples , Bactrim , Tomatoe sauce , peanut butter

*3491312827*

Order Status: **NEW**

Dispense: RN-DOT

Date and Time of Order: Jean Gilles,Lesly 12/3/2013 9:12:13 AM

| D/Hr | MONTH: Dec | | | | | | | | | | YEAR: 2013 | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 9A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

PROFILED BY: _____   DATE: 12-3-13   TIME:

**Drugs Not Administered Code Keys:**

1. Refusal
2. Out to court
3. Out to hospital/specialty clinic
4. Off unit (i.e., visit, recreation, library
5. Withhold(pending lab, abnormal lab,and/or vital signs)

6. Non-formulary and not available at time of administration
7. Not in cassette, pharmacy notified
8. Medication given to take to court or hospital specialty clinic
9. OOS (out of stock) at time of administration
10. NPO

## STAT OR SINGLE DOSE MEDICATION

| ORDER DATE | MEDICATION | DATE | TIME | INIT. | REASON AND RESPONSE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## MEDICATION NOT ADMINISTERED

| ORDER DATE | MEDICATION | DATE | TIME | INIT. | REASON AND INTERVENTION |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## NURSE'S SIGNATURE

| DATE | FULL SIGNATURE | INITIALS | PRINT NAME |
|---|---|---|---|
| 12/3/13 | Adrien A | A | C. Adrien, RN |
| 12/5/13 | AH | TG | T. GHEORGHIES |
| 12/4/13 | BNR | Q | Nast |
| 12/8/13 | RN | M | T. Roberts RN |
| | CBen | CB | Campbell-Bennett |
| | | | |
| | | | |

TO: FOIL Officer
FR: _Gregory Perkins_ DIN _14R2794_/LOC _G2-18_
RE: FOIL REQUEST
DATE: _1/16/2015_



  This request is made under the Freedom of Information Act
(FOIA), 5 U.S.C. Sec. 552 [and the Privacy Act 5 U.S.C. § 552a].

  Please send me copies of the following:
1. _See Attachments_
2. _____
3. _____

  As you know, the Freedom of Information Act provides that if
portions of a document are exempt from release, the remainer must
be segregated and disclosed. Therefore, I will expect you to send
me all nonexempt portions of the record which I have requested,
and ask that you justify any deletions with reference to specific
exemptions of FIOA. The information requested is not to be used
for commercial benefit, so I do not expect to be charged fees for
your review of the material to see if it falls within one of
FIOA's exepmtions.

Sincerely,

_Gregory L. Perkins_

Attachment of Foil Request

1) Please send me copies of the Following:

Documentation on Carmen Campell Bennett and Kathy Ann Dockery on 12/7/2013, 12/8/2013, and 12/8/2014 I need to Know what Facility they worked in For the above Dates, what time they Started For each above Date, and what time they Clocked out of Work For each above Date, I wish to Know if they was on over time OR worked For someone else... I need to Know what Post they took Vell at work For each day... The two Persons above work For corizon and are Defendants in a civil Complant.

Sincerely

Gregory L. Perkins

TO: FOIL Officer

FR: Gregory Perkins  DIN: 14R2794  LOC: G2-18

RE: FOIL REQUEST

DATE: Jan-12-2015


This request is made under the Freedom of Information Act (FOIA), 5 U.S.C. Sec. 552 [and the privacy Act 5 U.S.C. § 552a].


Please see attachement


As you know, the Freedom of Information Act provides that if portions of a document are exempt from release, the remainer must be segregated and disclosed. Therefore, I will expect you to send me all nonexempt portions of the record which I have requested, and ask that you justify any deletions with reference to specific exemptions of FIOA. The information requested is not to be used or commercial benefit, so I do not expect to be charged fees for your review of the material to see if it falls within one of FIOA's exemptions.

Sincerely,

Gregory L Perkins

PAGE 1

Please send copies of the following:

    1.) Documentation that would indicate an active address for the New York City Department of Corrections grievance supervisors. (Who supervises grievance coordinators and who do you make a complaint to about the grievance coordinator.)

    2.) Documentation that explains why theres no longer an active working address for CORC within the NYC department of corrections that are available to inmates, and if there is a newly established address please foreward said address.

    3.) Documentation that would indicate that theres a system in place for inmates who have a therapeutic diet and travels outside the facility and returns back into that facilities intake area and is able to receive the therapeutic meal. If there is no system in place please indicate so.

    4.) Documentation that would indicate that New York City corrections officers have appropriately trained on issues of medical concerns dealing with inmates that they do not interefere, deny, delay, or administer medication and what the dues and donts are concerning medical situations involving inmates. Something that would indicate what thier training was based on concerning inmates.

    5.) Documentation indicating the training of grievance coordinators and what they are allowed to do and what they are not.

6.) Please send a copy of documention that inmate has signed for his therapeutic meals in 2013 in Brooklyn Detention Complex as well as in 2014 if any.

7.) Copies of all grievances written in BKDC in 2013 and 2014.

Thank you for your time and consideration and hope that you'll be able to expedite this request due to obvious dead lines.

Respectfully Submitted,

Gregory L Perkins

PAGE 3

FREEDOM OF INFORMATION LAW REQUEST

FROM: Gregory Perkins          Din: 14R2794
Gouverneur Correctional Facility P.o. Box 370
Gouverneur NY 13642-0370
TO: New York City Department of correction
Records Access Officer
75-20 Astoria Blvd
East Elmhurst NY 11370
Date 11/20/2014
Pursuant to Public officers Law ss84-90, et seq,
Please Provide me with copies of the following —
Reasonbly described records:
1) New York City Department of corrections has a
System in Place Therapeutic diets For inmates
When on an appointment or in transit outside the
Facility.

          Thank you.

                    Gregory L. Perkins
                    14 R 2794

Freedom OF INFormation Law request

From: Gregory Perkins   Din: 14 R 2794
        Gouverneur correctional Facility
        P.O. Box 480
        Gouverneur NY 13642-0370


TO: CHS Med Records unit
        NYC Department of health + hygiene
        Gotham center, 42-09 28th St 10th Floor
        Long Island city NY 11101
        Date 11/21/14

Pursuant to Public officers Law ss 84-90, et seq
Pleeas provide me with copies of the following
reasonably described Records:


1) New york city Department of correction Therapectic
Diet prescription Date 9-29-14
2) Medication orders Start 12-03-13   stop —
12-10-13   The Should be 3 orders in all

            Thank you,

                        Gregory L. Perkins
                        14-R-2794

FREEDOM OF INFORMATION LAW REQUEST

From: Gregory Perkins _____   DIN: 14R 2794
                                        B/C 349-13-12827
Ulster Correctional Facility
P.O. Box 800
Napanoch, NY 12458

To:   RECORDS ACCESS OFFICER

New york City Department of correction
Office of the Commissioner
75-20 Astoria Blvd
East Elmhurst Ny 11370

Date: _____ 11 ____ 03, 2014.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

     Pursuant to Public Officers Law §§84-90, et seq, plaeas provide
me with copies of the following reasonably described records:

1) New york City Department of correction Therapeutic
   Diet prescription Dated 9-29-14

2) Medication orders start 12-03-13  Stop 12/10/2013
   There should be 3 orders in all.

3) Copys of the 9th Fl log Book on December 6th
   2013 within BKDC

                          Thank you,

                          [signature]

                          Gregory Perkins
                          14 R 2794

28 01 ⱵLOⱵ ΛΟΝ LO
LEGAL DIVISION



**NEW YORK CITY DEPARTMENT OF CORRECTION**
**Joseph Ponte, Commissioner**

**Laura S. Mello**
Senior Counsel | FOIL Officer
75-20 Astoria Boulevard
East Elmhurst, New York 11370

718-546-0952
Fax 718-278-6001

January 30, 2015

Gregory L. Perkins
DIN# 14R2797
Gouverneur Correctional Facility
P.O. Box 480
Gouverneur, N.Y. 13642-0370

Re: FOIL Request

Dear Mr. Perkins:

This letter is to acknowledge the record request you submitted to the New York City Department of Correction (copy enclosed). Please be advised that the Department of Correction does not possess or maintain the information you request on Corizon employees. Please contact:

CHS Medical Records Unit
NYC Department of Health and Mental Hygiene
Gotham Center
42-09 28th Street
10th Floor
Queens, NY 11101

Very truly yours,

Laura S. Mello
Records Access Officer

Enclosure

TO: FOIL Officer
FR: _Gregory Perkins_ DIN _14R2794_ LOC _G2-18_
RE: FOIL REQUEST
DATE: _1/16/2015_

This request is made under the Freedom of Information Act
(FOIA), 5 U.S.C. Sec. 552 [and the Privacy Act 5 U.S.C. § 552a].

Please send me copies of the following:
1. _See Attachments_
2. _____
3. _____

As you know, the Freedom of Information Act provides that if
portions of a document are exempt from release, the remainer must
be segregated and disclosed. Therefore, I will expect you to send
me all nonexempt portions of the record which I have requested,
and ask that you justify any deletions with reference to specific
exemptions of FIOA. The information  requested is not to be used
for commercial benefit, so I do not expect to be charged fees for
your review of the material to see if it falls within one of
FIOA's exepmtions.

Sincerely,

_Gregory L. Perkins_

28 JAN 2015   10 45

Attachment of Foil Request

) Please send me copies of the following;

Documentation on Carmen campell Bennett and Kathy Ann Dockery on 12/7/2013, 12/8/2013, and 12/9/2013. I need to know what facility they worked in for the above dates, what time they started for each above date, and what time they clocked out of work for each above date, I wish to know if they as on over time or worked for someone else... I need to know what post they took Vell at work for each day...the two persons above work for orizon and are Defendants in a civil complant.

Sincerely

Gregory L. Perkins

# DOCS FOIL REQUEST

TO:  F. O. I. L. RECORDS ACCESS OFFICER

*CHS Medical Records Unit*

FROM:  *Gregory Perkins*       DIN #: *14R2794*

HOUSING LOC.:  *P.O. Box 480, Gouverneur NY 13642-*

DATE:  *2/9/15*

RE:  FREEDOM OF INFORMATION LAW REQUEST FOR DOCS RECORDS.

PLEASE BE ADVISED, that this is an official FOIL Request, pursuant to DOCS Directive, #2010, and 7 NYCRR, Part 5. I am hereby requesting access to the following information in the following format: (Check One)  [ ✓ ] – Copies   [  ] – Review   [  ] – Info.

*See Attachments*

*This request is made under the Freedom of Information act (FOIA), 5 U.S.C. Sec. 552 (and the Privacy Act 5 U.S.C. sec 552a).*

I understand that within (5) business days after receipt of this request you must either: (a)  acknowledge such receipt and provide me with the approximate date on which the request will be acted upon;  (b)  grant the requested access; or,  (c) deny the request, stating in writing your exact reason(s) for denial of access to all or any part thereof.  Please be advised that your failure to so respond may be construed as a denial and will be appealed to Department Counsel accordingly.

I understand further that, should an acknowledgement and approximate date be given, your time in which to act upon my request is extended to within (10) business days of acknowledgement and the approximate date you give must fall within that (10) day period. Please be advised that any such failure to so act may be construed as a denial and will be appealed to Department Counsel accordingly.

Finally, I respectfully remind you of your duty to inform me, in writing, of the reason (s) for denying access to any part of this request.  The reason (s) given must be in detail sufficient to permit intelligent appellate review by Department Counsel, or, if necessary, by a Court pursuant to Article 78 of the CPLR.

I appreciate your time and attention hereto.  Thank you.

(Signature)

cc:  Inmate

DISBURSEMENT ENCLOSED? (Check One)  [ ✓ ] – NO  [  ] – YES, Amount:

Attachment of FoiL Request

) Please send me copies of the Following:

Carmen Campell Bennett and Kathy Ann Dockey are Defendants in a civil complent that has a court Deadline and the info request should be back to me by 2/22/15.

) On 12/7/2013 and 12/8/2013, 12/9/13, Documentation what Facility they worked, what times they work what time they clocked in and out of work for the above dates. I need to know if they worked over time on if they worked for someone else on the above dates. There is a court deadline as stated above, this request is for the above named Corizon employees.

Truly,

Gregory L. Perkins



**NEW YORK CITY DEPARTMENT OF CORRECTION**
**Joseph Ponte, Commissioner**

**Laura S. Mello**
Senior Counsel | FOIL Officer
75-20 Astoria Boulevard
East Elmhurst, New York 11370

718-546-0952
Fax 718-278-6001

December 3, 2014

Gregory Perkins
#14-R-2794
Ulster Correctional Facility
P.O. Box 800
Napanoch, New York 12458

   Re: FOIL Request
   2015FR0498

Dear Mr. Perkins:

  This letter is a partial response to your request for records (copy enclosed). Enclosed please find a copy of the logbook pages you requested. Certain information relating to post equipment and other inmates has been redacted, pursuant to New York State Public Officers Law Sections 87(2)(b) and 87(2)(f).

  In order for the Department to provide you with the records relating to your therapeutic diet, please submit a signed and notarized HIPAA form. I have enclosed a blank HIPAA form for your convenience. Once we receive the form, we will promptly forward you any available therapeutic diet records.

       Very truly yours,

       Laura S. Mello
       Records Access Officer

Enclosure

255

Sunday, December 8, 2013   0300x58[?]

continue:

0320  Tour of area all appears secure at this time

0330  Tour of area all appears secure at this time

0345  Food wagon on post. Checked for contraband none found. Food handlers instructed to wash hands and don hairnets, gloves and aprons. Menu consist of Milk, Muffins fresh fruit, Bread, Jelly and mini wheats _____ M—

0400  Tour of area all appears secure at this time
      → Dietetic worker at this time _____ M—

0430  Tour of area all appears secure at this time
      2nd security inspection conducted. All appears secure and normal _____ Mait[?](U)

04[?]  Tour of area. W/ gas Dec[?] meal prep in progress _____ (U)

0500  Tour of area all appears secure at this time
      → Feeding in progress _____ Mait+ko[?]

0530  Tour of area all appears secure at this time
      Feeding completed. Sanitation completed in progress

0600  Tour of area all appears secure at this time  WR

0620  Tour of area. All appears secure _____ WR
      Sanitation completed _____ M—

0630  Tour of area all appears secure at this time

0700  Tour of area all appears secure at this time
      Count taken and verified TC= [103] All In

      Au 13        BU 12       CU 12      DU 12
      Au 14        ou 14       Cu 13      DU 13
      → 27         → 26        → 25       → 25

      Change of Tour
      Sunday, December 8, 2013   0700x58[?]

0700  C.O. Martin #16053 assumes post 9A with a verified TC of [103] All In _____ M—

      Au 13        B 12        Cu 12      Du 12
      Au 14        ou 14       Cu 13      Du 13
      → 27         → 26        → 25       → 25

      Equipment on post:
      _____
      _____
      _____
      _____
      _____
      _____

0700  1st Security inspection in progress _____

256

Sunday December 8, 2013   02-03-16 37

0725  Security inspection completed. All gates, doors, locks, keys, windows, exits, vents, cells, closet and all common area (day room, pantry, and shower) All appers secure at this time. — Mash

0730  Tour of area all appears secure at this time — M.S

0740  SRG (roster) read, reviewed and of Sallies. Inmates have been identified — Marsh

All previous entries read. Nothing unusual up to this time — Marsh - Mc

0800  Tour of area all appear secure at this time — M.L

0815  Rec Staff affording Recreation to respective — LTSL

0820  C.O. Summons #1052 on post as "B" officer

0830  Visual tour of area all appears secure at this time

Inmate _____ notified of a visit — Mc

0900  Visual tour of area all appears secure at this time

0903  C.O. Boyd #1846R on post to pick up chow.

_____

GP Sanitation in progress — Marsh

0905  Inmate _____ notified of a visit — Mc

Medication on post                    1896

0920  Tour of inspection. All areas secure. Officer instructed to maintain. Please announce services. Conduct (2) Security checks. Follow all DOC rules & regs. Notify the unit of any unusual incidents. Be safe. Pat Equip Reem Amt 5 in post. Log Mid-tour count Hats gloves aprons Temps Fresh Rec SRG Roster & Frequent tier entries. No unauthorized items on post/person. Ensure all trash garbage is removed after meal.

0940  _____ escorted to the clinic — Mc

0935  Visual tour of area all appears secure

0937  Inmate _____ (CB) notified of a visit — Marsh

1000  Visual tour of area all appears secure at this time

Food warmers turned on and filled with water

1020  Food wagon on post. Checked for contraband. None. Food handlers instructed to wash hands and don hairnet, gloves, and aprons. Menu of Beef Chicken leg 160°, Gravy 165°, Collard Greens 160°, Steamed Greens 160° Fresh fruit, whole wheat Bread

1030  Visual tour of area all appears secure at this time

1100  Visual tour of area all appears secure at this time

Feeding in progress — Marsh

257

Con't 10/6/13

1110  On Post for feeding                                    WDL

1130  Tour of area all appears secure at this time
      → feeding completed. Sanitation in progress

1115  Inmate _____ notified of a visit

1200  Visual tour of area all appears secure at this time
      → Sanitation completed                              M._____

1230  Visual tour of area all appears secure at this time

1235  2nd security inspection conducted. All
      → appears secured this _____                        M._____

1245  Inmate _____ (up) notified of - Visit

1245  Unscheduled Search  SRG's  ①                         _____

1301  Search completed                                     _____

1303  Visual tour of area all appears secure at this _____

1312  Inmate _____ notified of a Visit                    McA_____

1305  Inmates _____ (up) and Belle _____ (up) notified
      of a Visit                                           _____

1330  Visual tour of area all appears secure at this time
      _____ and _____ notified of Visit →

1337  C.O. Mohito #16053 off post to meal
      C.O. Park'd @ 0073 on Post M/R                       → 0073

1400  Tour of area all appears secure                      → 0073

1430  Tour of area all appears secure                      → 0073

1435  C.O. Palm @ 0073 off Post M/R completed              → 0073
      C.O. Mohito #16053 back on Post done meal

1500  Tour of area all appears secure at this time

1520  C.O. Mohito #16053 off post EOT                      _____

Change of tour 3x11   DECEMBER 8, 2013   SUNDAY

1520  C.O.R King 7080 assume the post for
      (A) verified the t.c. of 108 live breathing
      bodies  A 27 3/14  B 26 3/14  C 29 3/13  D 25 2/13
      _____

TS11  Security Inspection conducted on
      ER, gates, locks, showers, doors, lights,
      pantry, ceilings, windows, A/C, electrical,

258

cont'd  Sunday December 8, 2013  8 X 11
exit signs, fire safety exits, and all common
areas. O findings ok (illegible)
1530  Tour of area, all appears secure
1550  Inspection search (illegible)
(illegible)
Tour of area, all appears secure at this
time, no incidents to report
1600  Unscheduled search in progress (illegible)
this time all (illegible)
Tour of area, all appears secure (illegible)
1615  food wagon on post inspected for contraband
O findings. Menu consist of salami 8g
mustard, potato salad 3oz carrot celery
salad 3½, crushed pineapples and white
wheat bread. All inmate pantry was
instructed to wear apron, hairnet and gloves
while serving chow and conduct 2nd
sanitation after feeding is complete (illegible)
1630  Tour of area, all appears secure (illegible)
1700  feeding in progress at this time (illegible)
Tour of area, all appears secure (illegible)
(illegible scribbles)
1730  Tour of area, all appears secure (illegible)
feeding completed at this time (illegible)
1800  Tour of area, all appears secure
1805  CO R (illegible) 7030 off post for meal
C.O. McCullough 17664  on post for meal
1830  Tour of area all appears to be secure
1845  CO R King 7030 back on post from meal
1850  Medication on post printed by (illegible)
1900  Tour of area, all appears secure
(illegible)
1930  Tour of area, all appears secure
2000  Tour of area, all appears secure

259

cont'd | Sunday December 8, 2013  3X11
2030 | Tour of area, all appear secure. we
(2nd) Security inspection conducted on toi,
gates, locks, showers, pantry, day rm,
closet and all common areas. Standing
2100 | Tour of area, all appears secure By JW
2130 | Tour of area, all appears secure By JW
2200 | Tour of area, all appears secure
2230 | Tour of area, all appears secure
2245 | final Sanitation completed at this time
2300 | Lock in completed at this time
2830 | CO ___ P 2030 EOT

CHANGE OF TOUR Mon Dec 9, 2013 ___
2330 | C/O Clayton #14384 on post of 9A with
A verified  T.C = 103 A 27 (13/14)
B 26 (12/14) C 25 (12/13) D 25 (12/3

___ R. Read previous logbook
enteres, nothing reported unusual to
this writer. (1st) Security inspection conduct
of all common areas, doors, locks, exits
gates, showers, pantry All Appeares to be
secure & normal — 14384
2345 | Security inspection Completed — 14384
"B" officer  C/O Martin # 6053
2400 | Tour of Area Appears secure — 14384
0030 | Tour of Area, Appears secure — 14384

[remaining lines illegible]



MTH DECEMBER 7, 2013 3X11 SATURDAY

2330 Tour of area, all appears secure

000 Tour of area, all appears secure

2330 Tour of area, all appears secure

2345 (2nd) Security Inspection conducted on tier, gates, locks, showers, pantry, day room closets, windows, fire safety and all common areas & ∅ findings & 2300

1100 Tour of area, all appear secure 2330

2100 Tour of area, all appears secured 2130

2130 Tour of area, all appears secured 120

2100 Tour of area, all appears secure 2300

2130 Tour of area, all appears secure 2300

Final Sanitation is completed on this tier 2300

2245

200 Lock in completed

315 LOCK PEO1

CHANGE of TOUR December 7, 2013 11x7 SATURDAY

2345 I, C/O Summons # 11856 assumes Post "9B" returning from the institutional Search. Physical count taken and verified TC = 103

2355 1st security inspection in progress utilizing Rubbermallet

0010 1st security inspection Now complete, Checked all doors locks, Gates, Common Areas, all appears Secure, NO CONTRABAND Found.

0030 Toured area, all appears Secure

212

Cont'd                    12·8·2013            29XBT31

0100 Tour of area, all appears        Secure
0130 Tour of area, all    appears     Secure
0200 Tour of area, all    appears     Secure
0230 Tour of area, all    appears     Secure
0300 Tour of area, all    appears     Scene
0330 Tour of area, all    appears     Secure
0400 Diabetics Awaken      Devore (LB)  Buckeye (UC)
     Tour of area, all appears    Secure
0430 Food wagon on post, food prep in progress
0435 Tour of area. All appears ____ Meal
     Prep in progress
     ____ in progress
0530 Feeding and Sanitram complete
0600 Tour of area all appears  secure
0615 Tour of area, all    appears    secure
0630 Tour of area, all    appears    secure
0630 Tour of area, all    appears    secure
0700 Tour of area, all    appears    secure

CHANGE OF TOUR   December 8, 2013        07 00 X1531

0820 I, c.o. Summers #11856 assume post 9B Relieving
     from the institutional search. Physical count taken
     and verified [TC = 108]

0830 1st security inspection now in progress utilizing ____
0845 1st security inspection now complete, checked all
     doors locks, windows, common areas, showers, cres
     all appears secure, No CONTRABAND found.
0900 Tour of area, all appears secure
0902 Tour of ____ all appears secure. ____
     instructed to maintain sanitation, Supv ____
     conduct ____ security check. ____
     Complete task assigned. Follow all DOC
     rules & regs. Notify the unit of any unusual
     incidents. Be safe. No equip ____
     ____
     ____



Cont 12-8-13   7hs

No unauthized items in post/pers. — Ensure trays
Garbage is removed from area                    Done
Ensure sanitate forms are completed, vacant cells
are cleaned                                      Cgot WN in

1000 Tour of area, all appears secure
1030 Tour of area, it appears secure
Food wagon on post, Food prep in progress
Locking down the house for feeding.
1100 Feeding in progress @ this time
1130 On post f— feeding
1145 Feeding complete, Sanitation in progress
1200 Tour of area, cell appears secure
1230 Tour of area, cell appears secure
1300 Tour of area, all appears secure
1330 Tour of area all appears secure
1335 co. summers #11956 off post for meal
    CO. Stephane #15526 on post at this time returning
    CO. Summers #11956 for meal at this time — CO.
1400 Tour of area all appears normal. — CO. Stephane
1430 Tour of area all appears normal. — CO. Stephane
    CO. Stephane #15526 off post at this time
    Completed — CO. Stephane
1435 Tour of area, all appears secure
1500 Tour of area, all appears secure
    Lockin in progress @ this time
    CO. Summers #11956 off post E.O.T

CHANGE OF TOUR SUNDAY 8th DECEMBER 2013  1600-2331  NR TOUR
1605  CO Robert, L #18742 on post on 9th floor B officer
      with a TC — Read the previous
      tour nothing unusual occured.
      1st Security
      inspection was conducted on all common areas, all
      appears to be normal — Robert 18742
1620  food wagon on post checked for contraband "0"
      found menu consist of Salami 37°F, Mustard, Potato Salad
      36°F, Carrot and Celety Salad 38°F, Crushed Pineapple 37°F and
      whole wheat Bread. Pantry workers will be instructed
      to wear gloves, aprons and hair net while handling
      food — Robert 18742

214

CONT'D  SUNDAY  8th DECEMBER 2013 1500-2331  NR TOUR

| | |
|---|---|
| 1630 | Tour of area, all appears Normal — Roberts |
| | feeding is in progress ————— Roberts18942 |



| | |
|---|---|
| 1700 | Tour of area, all appears normal — Roberts |
| 1720 | CO Roberts, L #18942 out to meal ————— Roberts |
| 1720 | C.O. McCullough 17664 on post for meal |
| 1730 | Institutional feeding completed at this th |
| | Tour of area all appears to be secure — C. omsp |
| 1800 | Tour of area all appears to be secure — com/M |
| | CO Roberts, L #18942 back from meal — Roberts |
| 1830 | Tour of area, all appears normal — Roberts |
| 1850 | Medication is in progress — Roberts1892 |

| | |
|---|---|
| 1900 | Tour of area, all appears normal — Roberts189 |
| 1930 | Tour of area, all appears normal — Roberts89 |
| 2000 | Tour of area, all appears normal — Roberts189 |
| 2005 | Completed 2nd security inspection on all common |
| | areas, all appears normal — Robert18942 |
| 2030 | Tour of area, all appears normal — Robert18942 |
| 2100 | Tour of area, all appears normal — Roberts1892 |
| 2130 | Tour of area, all appears normal — Roberts1892 |
| | Sanitation is in progress at this time — Robert18942 |
| 2200 | Tour of area, all appears normal — Roberts1891 |
| 2230 | Tour of area all appears Normal. Sanitation is comp |
| | in dayroom, shower area, toilet and all common a |
| 2300 | Tour of area all appears normal — Robert18942 |
| 2327 | CO Roberts, L #18942 off post — Roberts18942 |

254

9A

2300 Visual tour of area all appears to be Secure —
2310 Visual tour of area all appears to be Secure — #15978
2330 Visual tour of area all appears to be Secure Johnson
2336 C/o Johnson #15978 off post Escort —

Change of Tour
Sunday, December 8, 2013 2300x0731

2336 C.O. Merritt 16053 assumes post QA
with a verified TC = [103] All On —

| Ay | 13 | By | 12 | Cy | 12 | Dy | 12 |
|---|---|---|---|---|---|---|---|
| AL | 14 | BL | 14 | CL | 13 | DL | 13 |
| | → 27 | | → 26 | | → 25 | | → 25 |

Equipment on post 1 [redacted]

[E]: [redacted]

[I]: [redacted]

2310 1st security inspection conducted at the —
2345 AM F.O. Simmonds #11886 on post as "B" officer
0001 Visual tour of area all appears secure at the —
Security inspection completed. All gates, doors, locks, keys, grills, windows, walls, desks, and all common areas (dayroom, pantry, ...). All appears secure. No contraband found
0005 SRG roster read, reviewed and as follows: [9]
inmates identified —
All previous entries read. Nothing unusual reported to me on this tour —
0030 Tour of area all appears secure at the —
0050 Tour & Inspection All appears Secure Officer instructed to maintain Census Announced Log services. Conduct 6 Security Checks. Follow all DOC Rules & regs. Notify the unit of any unusual incidents. Be Safe. Mr. Equip. Remain Alert's on post. Log Mid-Tour Count that gloves aprons temps for meal Review SRG roster & previous tour entries. No unauthorized items on post/person. Remove all trays/garbage after meal — Capt. WD 0100
0100 Tour of area all appears secure at the —
0130 Tour of area all appears secure at the —
0200 Tour of area all appears secure at the —
0215 Tour of area all appears secure at the —

# New York City Department of Correction

# THERAPEUTIC DIET PRESCRIPTION

DATE: 9-29-14

INMATE NAME: Perkins, Gregory

BOOKING CASE #: 349-13-12827  SEX: M  AGE: 50

FACILITY:                    HOUSING/LOC:

FOOD ALLERGY: Tomatoes - Chili - Peanut butter - Pineapple

HEIGHT:        ADMISSION Wt:       PRESENT Wt:        IBW:

## Check appropriate box:

☑ Carbohydrate Controlled            ☐ Renal (60 Grams Protein)

☐ Clear Liquid                       ☐ Renal (80 Grams Protein) For Hemodialysis Inmates

☐ Full Liquid

☐ Modified Consistency

☐ Puree

☐ Enteral Feeding: (Refer to DOC Diet Manual)

CONSULTATION REQUEST FORM REQUIRED FOR:

High Calorie Diet          Supplements          Snacks

NOTE: This form is only for ordering Therapeutic Diets. **DO NOT** add to the above diets. Refer to the DOC Diet Manual available in the Clinic. Individual food preferences are not accommodated. Use Consultation Forms for additional diet-related evaluations.

_____                    9-29-14
M.D. /P.A. Signature                          Date

Revised 10/2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

Gregory Perkins

Plaintiff,

Affirmation of Service

-against-

Carlton Newton et al

14 CV 02670 (Kam) (LB)

Defendant.

———————————————————————— x

I, Gregory Perkins , declare under penalty of perjury that I have

served a copy of the opposition to defendants motion to Dismiss,

upon Andrew J. Rauchberg, corporation counsel of the city of new york

whose address is: 100 Church St Room 2-189

New york NY 1007

Dated: _____

Gouverneur , New York

Signature

P.O. BOX 480   (G.C.F.)
Address

Gouverneur NY 13642-0370
City, State, Zip Code