```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
 GREGORY PERKINS,

                Plaintiff,                      **MEMORANDUM & ORDER**

     - against -                                14-CV-2670(KAM)(LB)

 CARLTON NEWTON "Warden"; MR. BROWN
 "Grievance Coordinator"; CLARKE #4399;
 BOYD #18468; WEISE #18492; CARMEN
 CAMPBELL BENNETT; KATHY ANN DOCKER; C.O.
 MICHAEL TURNBULL #9879; CITY OF NEW YORK.

                Defendants.
-------------------------------------X
```

**MATSUMOTO**, United States District Judge:

    Plaintiff Gregory Perkins commenced this action *pro se* pursuant to 42 U.S.C. § 1983 ("§ 1983") against the City of New York (the "City"), Warden Carlton Newton, Grievance Coordinator Brown, Correctional Officer Clarke, Correctional Officer Boyd, Correctional Officer Weise, Nurse Carmen Campbell Bennett, Nurse Kathy Ann Docker, and Correctional Officer Michael Turnbull (collectively, the "defendants") alleging violations of his constitutional rights.  (Compl., ECF No. 1, filed April 24, 2014.)  Plaintiff amended his complaint on September 9, 2014.  (Am. Compl., ECF No. 37.)  Plaintiff alleges violations of his Eighth Amendment rights due to the conditions of his confinement; violations of his First, Fifth and Fourteenth Amendment rights related to inmate grievance procedures; and municipal liability pursuant to 42 U.S.C. § 1983.

Presently before the court is defendants' motion to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 69.) By memorandum dated February 17, 2015, plaintiff opposed the motion. (ECF No. 71.) For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

The following facts are taken from plaintiff's Amended Complaint and are assumed to be true for the purposes of the court's evaluation of the motion to dismiss.

### I. Therapeutic Diet

Plaintiff has a therapeutic diet due to allergies to chili, tomato, pineapple, and peanut butter. (Am. Compl. at 50[1].) According to plaintiff's patient summary report, the allergies cause itchiness and hives. (*Id.*) Plaintiff alleges that when he was housed at the Brooklyn Detention Complex ("BKDC"), on each occasion when he traveled outside of the facility for court appearances, for example to the Manhattan Detention Center, Otis Bantum Correctional Center, and Robert N. Davoren Complex, he was not provided with his therapeutic diet meal upon his return. (*Id.* at 6.) The Amended Complaint alleges that plaintiff was deprived of his therapeutic diet meal

---

[1] Due to inconsistent page numbering and because some of plaintiffs' exhibits have two heading stamps, the court clarifies that the page numbers referenced herein correspond to the ECF heading stamp for ECF document number 37.

2

on four specific instances. (*See id*. at 52 (plaintiff was not provided with special diet meal on February 11, 2014, which was the "third time"); *id*. at 56 (plaintiff was not provided with therapeutic diet upon return from a court date and "was not able to eat").

Plaintiff also describes an instance when he was held in a cell connected to a courtroom in the Southern District of New York, and Correctional Officer Weise was responsible for providing food to plaintiff. (*Id*. at 7.) When plaintiff informed Correctional Officer Weise of his peanut butter allergy and requested a cheese sandwich, Correctional Officer Weise informed plaintiff that he did not have any more cheese sandwiches. (*Id*.) Plaintiff told Correctional Officer Weise that he was entitled to a meal, to which Correctional Officer Weise responded that "he would see what he could do" and sat down. (*Id*.) Plaintiff alleges that over the course of several hours Correctional Officer Weise made no attempt to provide plaintiff with an appropriate meal. (*Id*.)

**II.  Medical Care**

On the morning of December 8, 2013 between 8:00 a.m. and 9:00 a.m. at BKDC, Correctional Officer Boyd went to plaintiff's housing unit for the purpose of escorting plaintiff to the medical clinic to obtain medication under direct observation. (*Id*. at 7.) Correctional Officer Boyd stood at

the gate of plaintiff's housing unit and called plaintiff's name. (*Id*.) Plaintiff responded that he was in the lavatory. (*Id*.) Plaintiff alleges that Correctional Officer Boyd became frustrated and told him to hurry up, and by the time plaintiff reached the gate, Correctional Officer Boyd had departed. (*Id*.) Plaintiff then spoke to Correctional Officer Martin who called down to the medical clinic, and plaintiff was informed that "they would return for [him]." (*Id*.) At approximately 12 p.m. or 1 p.m., plaintiff spoke with the area captain and explained the circumstances. (*Id*. at 8.) Plaintiff alleges that the area captain called Correctional Officer Boyd who told the area captain that plaintiff had already received his medication. (*Id*.) Plaintiff denied receiving his medication. (*Id*.)

At approximately 3:00 p.m., plaintiff was escorted to the medical clinic where Correctional Officer Boyd, Correctional Officer Michael Turnbull, and Nurse Carmen Campbell Bennett were present[2]. (*Id*.) Nurse Bennett told plaintiff that he had already received his medication and showed him the medication log indicating that plaintiff received medication on December 7, 2013 at 9:00 p.m. and on December 8, 2013 at 12:00 midnight.

---

[2] In his Amended Complaint, plaintiff only identifies Correctional Officer Boyd by name and identifies the other two individuals as Correctional Officer John Doe and Nurse Jane Doe #1. (Am. Compl. at 8.) Defendants filed a letter providing the names of the John Doe and Jane Does. (ECF No. 57.) In his opposition, plaintiff requests the court to amend his complaint replacing the names of the Doe defendants. (Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") at 6, ECF No. 71.) The court deems the complaint amended and substitutes the names of the Doe defendants herein.

4

(*Id.*)  Plaintiff alleges, however, that he did not receive his medication at midnight on December 8, 2013.  (*Id.*)  Plaintiff then asked Nurse Bennett for the name of the nurse who had documented plaintiff's receipt of medication at midnight and Nurse Bennett refused plaintiff's request.  (*Id.*)  Plaintiff also asked for Nurse Bennett's name and she refused to provide her name.  (*Id.*)  Nurse Kathy Ann Dockery then approached and stated to plaintiff, "I understand you are acting like a little girl."  (*Id.*)  Nurse Dockery retrieved the medication log, which plaintiff alleges had been altered.  (*Id.*)  Plaintiff pointed out that the medication log had been altered, and Nurse Dockery allegedly became frustrated, began to walk away, and stated that she had initialed the document and "so what; prove it."  (*Id.*)

### III. Inmate Grievance Procedure

Correctional Officer Clarke and Mr. Brown, the grievance coordinator, work together in the grievance office at BKDC, and plaintiff alleges that they "cherry pick" the grievances they "choose to deal with," while the remainder are "completely ignored and destroyed."  (*Id.* at 6.)  Plaintiff alleges that the grievances that pass the scrutiny of Correctional Officer Clarke and Mr. Brown are forwarded to the warden's office, and that the warden "has not one time dignified a grievance with a response."  (*Id.*)  Plaintiff has forwarded copies of his grievances that were deemed non-grievable to the

5

Board of Corrections and to the warden and has received one or two letters from the commissioner's office stating that his complaint has been received and is being forwarded to the appropriate unit for investigation. (*Id.*) Plaintiff alleges that thereafter, he "never heard from [the relevant departments] again." (*Id.*) On February 20, 2014, plaintiff spoke with Correctional Officer Clarke and asked her if she received the grievance that he had submitted. (*Id.*) Correctional Officer Clarke stated that she did receive the grievance and thereafter, "[a]s in many other grievances, this particular too has disappeared." (*Id.*)

Plaintiff filed a grievance in connection with the incident relating to his medication on December 8, 2013 and alleges that he "was met with verbal aggression from Officer Clarke and Mr. Brown." (*Id.* at 9.) Plaintiff also filed a medical complaint, which was "disregarded as harmless error." (*Id.*)

## STANDARD OF REVIEW

### I. Motion to Dismiss Pursuant to Rule 12(b)(6)

In reviewing plaintiff's complaint, the court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations

and citations omitted). Nonetheless, a court "should not hesitate to dismiss a *pro se* complaint if it fails altogether to satisfy the pleading standard." *Henry v. Davis*, No. 10 Civ. 7575, 2011 WL 3295986, at *2 n.5 (S.D.N.Y. Aug. 1, 2011).

Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); Fed. R. Civ. P. 12(b)(6). This plausibility standard is guided by "[t]wo working principles." *Id*. First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## **DISCUSSION**

Defendants move to dismiss the Amended Complaint in its entirety. The court addresses plaintiff's claims for deprivation of his therapeutic diet and inadequate medical care

7

in violation of plaintiff's Eighth Amendment rights, and denial of due process in violation of his First, Fifth and Fourteenth Amendment rights in turn.[3]

## I. Conditions of Confinement and Medical Care

The conditions of a prisoner's confinement and adequacy of his medical care can give rise to an Eighth Amendment violation. *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002); *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind," *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

---

[3] Defendants contend that plaintiff failed to exhaust his administrative remedies with respect to his allegations of deprivation of therapeutic meals and denial of due process, as required under the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). However, because the court finds that the Amended Complaint fails to state a claim, there is no need to reach the issue of whether plaintiff exhausted his administrative remedies. *See* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

### A. Therapeutic Diet

"[T]o establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps*, 308 F.3d at 185 (citations omitted). While the Constitution "does not mandate comfortable prisons," prisoners may not be denied "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). Under the Eighth Amendment, prisoners may not be denied of their "basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 32 (1993) (citation and internal quotation marks omitted). Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id.* at 35.

With respect to the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. "This 'deliberate indifference' element is equivalent to the

familiar standard of 'recklessness' as used in criminal law." *Phelps*, 308 F.3d at 186 (quoting *Farmer*, 511 U.S. at 839-40).

The court finds that plaintiff has failed adequately to allege that defendants acted with deliberate indifference. Plaintiff has failed to allege any plausible facts that any official was aware of, or should have been aware of, a substantial risk of serious harm if plaintiff was deprived of a single meal, albeit on four isolated occasions. Although the court is sympathetic to plaintiff's dietary allergies and plaintiff may have adequately alleged a negligent state of mind on the part of defendants, plaintiff has failed to allege facts to meet the standard of deliberate indifference to the risk serious harm as required by 42 U.S.C. § 1983. Consequently, plaintiff's claim of deprivation of his therapeutic diet in violation of 42 U.S.C. § 1983 is dismissed.[4,5]

---

[4] Defendants also argue that plaintiff fails adequately to allege the objective element of an Eighth Amendment claim, that the conditions of his confinement "violate contemporary standards of decency." *Phelps*, 308 F.3d at 185 (citations omitted). The court declines to dismiss plaintiff's claim of deprivation of his therapeutic diet on this ground. Some district courts in this Circuit have held that depriving an inmate of one or two isolated meals does not meet the objective element of an Eighth Amendment claim. *See Inesti v. Hogan,* No. 11-CV-2596, 2013 WL 791540, at *24 (S.D.N.Y. Mar. 5, 2013), *adopted by* 2013 WL 5677046 (S.D.N.Y. Sept. 30, 2013) (holding that one meal missed was insufficient to establish a constitutional violation); *Cagle v. Perry,* No. 04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (holding that two meal deprivations were not sufficiently numerous, prolonged, or severe to rise to level of Eighth Amendment violation); *Zimmerman v. Seyfert,* No. 03-CV-1389, 2007 WL 2080517, at *27 (N.D.N.Y. July 19, 2007) (holding that requiring the plaintiff to go eleven hours without eating did not rise to the level of a constitutional claim). The court makes no finding as to whether isolated deprivations of a therapeutic meal on four occasions meets the objective element of an Eighth Amendment claim, because the court dismisses plaintiff's claim for deprivation of his therapeutic diet for his failure to allege adequately the subjective element. *Cf. Phelps*, 308

**B. Medical Care**

In cases alleging inadequate medical care, the objective component requires that plaintiff allege a sufficiently serious medical condition. A condition is sufficiently serious if it may cause "death, degeneration, or extreme pain," *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorsczyk*, 134 F.3d 104, 108 (2d Cir. 1998)), or if "the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

---

F.3d at 186 ("[T]he alleged treatment-that prison officials deprived Phelps of a nutritionally adequate diet for fourteen straight days-is not as a matter of law insufficiently serious to meet the objective requirement.")

[5] In his opposition, plaintiff contends that defendants' failure to provide him with therapeutic meals upon traveling outside of the facility constitutes a violation of the Equal Protection clause of the Fourteenth Amendment, because inmates with therapeutic diets are treated differently as s class. (Pl.'s Opp. at 12.) Plaintiff's claim, improperly asserted for the first time in his opposition, fails, because plaintiff's need for a therapeutic diet does not place him in any protected class. *Cf. Frasco v. Mastic Beach Property Owners' Ass'n*, No. 12-cv-2756, 2014 WL 3735870, at *5 (E.D.N.Y. July 29, 2014).

Identical to the standard for conditions of confinement, a plaintiff alleging a claim of constitutionally inadequate medical care must allege "the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280 (citation omitted).

The court finds that the Amended Complaint does not state plausible facts that plaintiff's medical condition was sufficiently serious to cause "death, degeneration, or extreme pain," or that "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." In his Amended Complaint, plaintiff does not identify the medical condition(s)[6] for which he was being treated on the morning of December 8, 2013, nor does he state the medication[7] that he was prescribed to take the morning of December 8, 2013. Plaintiff does not allege any facts as to whether his individual daily activities were affected by his

---

[6] In his opposition, plaintiff states that he has been diagnosed with asthma, degenerative disk disease, diabetes, hypothyroidism, sciatica, and immune thrombocytopenic purpura. (Pl.'s Opp. at 14.) Although the court is sympathetic to plaintiff's ailments, plaintiff's list of diagnoses alone, without identifying any symptoms that he was suffering prior to, during, and after his delay in treatment on December 8, 2013, is insufficient to allege that failure to treat any one or combination of his medical conditions could result in further significant injury or the unnecessary and wanton infliction of plain.

[7] Plaintiff describes the medication as "narcotic[s] medication" in his Amended Complaint. (Am. Compl. at 8.) Plaintiff lists his medications in his opposition, but does not provide any information about the frequency with which he takes the indicated medications. (Pl.'s Opp. at 14.)

12

medical condition and whether his medical condition causes any chronic and substantial pain.

The Amended Complaint also fails to allege that defendants knew or should have known that a substantial risk of harm to plaintiff would have resulted if he did not receive his morning medication until later in the day or if he missed one dosage.[8]  In his opposition, plaintiff contends that Correctional Officer Boyd was aware of the risk of harm, because she once took plaintiff to the clinic during an emergency when he was in great pain.  (Pl.'s Opp. at 14.)  Plaintiff does not provide any detail as to the cause of this prior emergency and that the pain resulting from his prior emergency is in any way related to the medication that he was prescribed to take on the morning of December 8, 2013.  Without sufficient facts, the court cannot infer that Correctional Officer Boyd's involvement in plaintiff's prior medical emergency made her aware that a substantial risk of serious harm to plaintiff would result if he missed one dosage of his medication.  Consequently, plaintiff's claim of inadequate medical care and conspiracy[9] to deprive him of adequate medical care are dismissed.

---

[8] It is not clear from plaintiff's allegations whether he received his medication on the afternoon of December 8, 2013, or whether plaintiff never received his morning dosage of medication.  This ambiguity does not change the court's analysis.
[9] Absent an underlying constitutional violation on which to base a claim in violation of 42 U.S.C. § 1983, a plaintiff's conspiracy claim fails as a matter of law.  *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110 (2d Cir. 1995).

13

**II. Inmate Grievance Procedure**

Although the Constitution guarantees meaningful access to the courts and a right to petition the government for redress, *see e.g., Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741 (1983) (finding that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"), inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim of violation of due process under § 1983. *See, e.g., Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). When an inmate sets forth a constitutional claim in a grievance to prison officials and the grievance is ignored, the inmate has the right to directly petition the government for redress of that claim. *See Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991). Therefore, the alleged refusal to process an inmate's grievance or failure to ensure that grievances are properly processed does not state a claim of violation of due process under 42 U.S.C. § 1983. *Ross v. Westchester County Jail*, No. 10 Civ. 3937, 2012 WL 86467, *8 n.9 (S.D.N.Y. Jan. 11, 2012)*.* Consequently, plaintiff's claim that the inmate

grievance system deprived his constitutional right to due process is hereby dismissed.[10]

### III. Municipal Liability

To state a claim for relief against a municipal defendant pursuant to 42 U.S.C. § 1983, a plaintiff must allege the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 403-404 (1997) (citing *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978)). Additionally, where a court finds no underlying constitutional violation, it need not address the municipal defendants' liability under *Monell*. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Here, plaintiff has failed to allege any underlying constitutional deprivation. As such, his claims of municipal liability are also dismissed.

### IV. Local Civil Rule 7.2

Plaintiff asserts that defendants violated Local Civil Rule 7.2 by failing to provide printed copies of any "reported

---

[10] To the extent plaintiff attempts to allege a new claim of retaliation for First Amendment activity in connection with an alleged unconstitutional search for the first time in his opposition, the claim is dismissed. This incident is the subject of plaintiff's suit in the Southern District of New York, docket number 14-cv-3779, and plaintiff has stated in his Amended Complaint that the issues related to the retaliation "will be followed up within the Southern District of New York." (Am. Compl. at 9.)

15

or unreported" decisions.  (Pl.'s Opp. at 25.)  Plaintiff misconstrues Local Rule 7.2, however, which merely requires that counsel shall provide *pro se* litigants "with copies of such unpublished cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases." Defendants represent that they provided plaintiff all such cases, and plaintiff notes that he received nineteen attached cases, which is consistent with the number of authorities in defendants' memorandum that are unpublished or reported exclusively on computerized databases.  As such, the court finds no violation of Local Civil Rule 7.2.

**CONCLUSION**

For the foregoing reasons, the court grants defendants' motion in its entirety. Plaintiff's Amended Complaint is dismissed without prejudice to amend. Plaintiff must file his second amended complaint within 45 days of this Memorandum and Order. The court notes that the second amended complaint completely replaces plaintiff's previous complaints. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Plaintiff should designate his newly amended complaint as a "Second Amended Complaint." Failure to file a second amended complaint in 45 days will result in dismissal with prejudice. Defendants are respectfully directed to serve a copy of this Memorandum and Order on plaintiff.

**SO ORDERED.**

Dated:   February 10, 2016
         Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge